UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

SUSAN GRUND,                                       )
                                                   )
                  Plaintiff,                       )
       vs.                                         )     2:08-cv-0006-WTL-TAB
                                                   )
COMMISSIONER BUSS, in his official capacity,)
                                                   )
                  Defendant.                       )

**Entry Discussing Motions for Preliminary Injunctive Relief
and Directing Further Proceedings**

**I.  Background**

Plaintiff Susan Grund ("Grund") is an inmate confined at the Rockville Correctional Facility ("RCF"). As a result of having ruptured breast implants, Grund has been experiencing pain in her breasts and abdomen and other symptoms since December 2006. In this action, Grund alleged that defendants Julie Stout, Superintendent of RCF, and Dr. Jeffrey Smith violated the Eighth Amendment through their deliberate indifference to Grund's serious medical needs. Grund sought injunctive relief and compensatory damages.

On January 8, 2009, the court granted the motion to dismiss filed by defendant Dr. Jeffrey Smith on the basis that the complaint failed to state a claim upon which relief could be granted because Dr. Smith's alleged conduct fell short of deliberate indifference to a serious medical need.

The court entered summary judgment in favor of Superintendent Stout through the Entry of July 6, 2009, on the basis that Superintendent Stout played no role in the delivery of medical care to Grund and was not deliberately indifferent to Grund's serious medical needs. All claims have now been resolved with the exception of Grund's claim for injunctive relief.

On its own motion, the court dismissed the claim for injunctive relief against Superintendent Stout and on September 8, 2009, Edwin Buss, Commissioner of the Department of Correction ("DOC"), in his official capacity, was added as a defendant for the purpose of responding to the plaintiff's claim for injunctive relief.

Grund's motion for prospective relief (dkt 120) and motion for injunction relief (dkt 125), Buss' response thereto, and Grund's replies are considered in this Entry. As explained below, Grund's motions must be **denied.**

## II. Legal Standard

Grund seeks injunctive relief in the form of surgery to remove ruptured breast implants and to replace them with new breast implants. Grund asks that the court order the "removal and replacement breast surgery while litigations continue instead of making the Plaintiff suffer while the Courts decided the final outcome."

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation omitted). To obtain a preliminary injunction, the moving party must demonstrate that she has a reasonable likelihood of success on the merits, that traditional legal remedies would be inadequate, and she will suffer irreparable harm if the injunction is not granted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Christian Legal Society v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006). If any one of these threshold requirements are not satisfied, the court must deny the injunction. *Girl Scouts*, 549 F.3d at 1086. If the moving party passes the first three requirements, then the court must balance, on a sliding scale, the irreparable harm the moving party would suffer without the injunction and the harm an injunction would cause to the opposing party. *Id.* The more likely the moving party is to succeed, the less the balance of harms must weigh in her favor; the less likely the moving party is to win, the more the balance of harm must weigh in her favor. *Id.* The court may also consider any effects that granting or denying the injunction might have on non-parties, *i.e.*, the "public interest." *Id.*

## III. Discussion

The parties agree that the removal of the implants is a medically necessary procedure. That surgery has been approved by Correctional Medical Services, Inc. ("CMS"), the entity that has contracted with the DOC to provide medical care to offenders in DOC custody. The medical director of the DOC, Dr. Elton Amos, reviewed Grund's medical records and submitted an affidavit in support of the defendant's response. Dr. Amos opined that breast implant replacement surgery is not medically necessary in this case. Dr. Amos stated that replacement of Grund's breast implants would not address significant impairments in Grund's ability to perform activities of daily living, significantly relieve Grund's pain, nor otherwise significantly improve her health.

The DOC has concluded that it is not financially responsible for replacing Grund's breast implants because such surgery has not been determined to be medically necessary. If both procedures were deemed medically necessary, there would be no dispute that the DOC would be financially responsible for the cost of surgery, and both procedures would be provided in whatever manner the medical professionals deemed most appropriate.[1]

---

[1] The record shows that Grund was provided access to a plastic surgeon for the purpose of removing her breast implants and was taken to her scheduled appointments. On January 17, 2008, Grund refused transportation to the hospital and missed the scheduled surgery. Grund's

Grund alleges that if the implants are not replaced, she will be left "deformed and defective," which would cause her mental state to decline. Grund does not argue that the DOC should pay for the replacement surgery. She states that she has never asked the defendants to pay for the replacement portion of the surgery.[2] As noted above, Grund seeks an order that her removal and replacement surgeries be done in a single surgical procedure, the DOC to pay for the removal portion and Grund to pay for at least part of the replacement portion. She has at one point offered to pay $3,000 toward the surgeon fee for the replacement surgery. She suggests that she would pay for the implants but the DOC should pay for the beginning and conclusion of surgery, facility fee and anesthesiologist for a single surgery because those costs would be incurred either way. The issue presented is whether the defendant is deliberately indifferent to Grund's serious medical needs if it does not provide the breast implant removal surgery on Grund's terms, *viz.,* at the same time that Grund has the replacement surgery.

*Likelihood of Success on the Merits*

As noted above, Grund's claim is based on the duty imposed by the Eighth Amendment to the Constitution that prison officials provide adequate medical care to prison inmates. Grund states in her reply that she has refused breast implant removal surgery without having the breast implants replaced at the same time "due to the seriousness of two surgeries when one would suffice." There is no evidence relating to the specific procedures that Grund would undergo. No medical personnel, including Grund's physicians, have opined that having two surgeries rather than one would pose preventable and serious risks to Grund's health. Absent such evidence, Grund has not demonstrated that the defendant is deliberately indifferent to her serious medical needs by not providing a single surgery. On a practical point, Grund's offer to pay a flat amount of money does not address matters of how the division of surgical and anesthesia costs, liability, and responsibility for certain portions of a single surgery might be accomplished. There is no evidence that proceeding in the manner Grund insists would be preferred by the surgeon performing the procedures for the sake of Grund's health. In this respect, Grund has failed to show a likelihood of success on the merits.

*A Lack of Adequate Remedy at Law*

Grund must show that traditional legal remedies, money damages, would not be adequate. *Girls Scouts*, 549 F.3d at 1095. If Grund has the removal surgery before the replacement surgery, it will then be too late to address her claim for injunctive relief in the form of a single surgery. Grund seeks an equitable remedy. Grund has no adequate remedy at law. This factor weighs in her favor.

---

stated reason was that she would only consent to the removal of the leaking implants if the implants were going to be replaced at the same time. Lacking Grund's consent to remove the breast implants, the surgery was not performed.

2The court notes, however, that in her filing of July 21, 2009 (dkt 117), Grund stated she would be willing to consider breast *reduction* surgery after the removal of the ruptured implants, if CMS were to bear the cost.

3

*Irreparable Harm*

Harm is considered "irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Girl Scouts*, 549 F.3d at 1089 (internal quotation omitted). Irreparable harm is a type of injury "which cannot be repaired, retrieved, put down again, atoned for" and is not compensable in monetary terms. *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (internal quotation omitted). Grund's assertion that having two surgeries would constitute substandard care or would impose serious preventable harm is based solely on her own opinion. Grund does not argue that the replacement surgery is medically necessary and she has agreed to pay for at least part of that procedure. She has not identified in what way having two surgeries instead of one would constitute irreparable harm. This factor does not weigh in her favor.

Grund is not being denied the surgery that she needs. The DOC has stood ready to perform the surgery that is medically necessary. It is Grund who has made the surgical removal of her ruptured breast implants conditional on another procedure. Even if a particular physician would choose to perform both surgeries at once, a difference in opinion would be insufficient to make out a violation of the Eighth Amendment. *Johnson v. Doughty*, 433 F.3d 1001, 1009 n. 8 (7th Cir. 2006) (merely showing that some medical professionals would choose a different course does not state a constitutional claim); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("[T]he Constitution is not a medical code that mandates specific medical treatment."). Under these circumstances, the court cannot find that prison officials have a duty under the Eighth Amendment that requires that a single surgery be performed, encompassing what has been deemed medically necessary and what has not. Because Grund has failed to satisfy all three threshold requirements, the court must deny her motions for preliminary injunctive relief. *See Girl Scouts*, 549 F.3d at 1086.

As further explanation, when presented with claims for preliminary injunctive relief from inmates, the court must consider its role in relation to prison administration. "We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

If the court were to grant Grund's request for a preliminary injunction, the court would be requiring a prison and its medical providers to perform a surgery in a manner that has not been championed by any medical provider. To order such surgery in the absence of the judgment of medical personnel and/or an agreement between the parties exceeds the authority that the court can properly exercise in the context of a prison setting. The court also foresees possible difficulties in ascertaining the division of labor (public and privately paid personnel), costs, potential liability, and other issues that might arise if a single surgery were conducted with separate payors. "'[I]t is difficult to generalize about the civilized minimum of public concern necessary for the health of prisoners except to observe that this civilized minimum is a function both of objective need and cost.'" *Knight v. Wiseman*, 590 F.3d 458, 467 (7th Cir. 2009) (quoting *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004)). A prison medical professional's "treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances." *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008) (internal quotations

omitted).

## IV.  Conclusion

For the reasons set forth above, Grund's requests that the court issue a preliminary injunction in the form of an order requiring CMS through the DOC to provide a single surgery as opposed to two surgeries to remove and replace her ruptured breast implants (dkt 120, dkt 125) must be **denied**.

Due to the passage of time, the defendant shall **promptly** arrange to have Grund examined and then ascertain whether the position of CMS and the DOC remain the same in relation to the approval of surgery for Grund. The defendant shall report its findings to Grund and to the court. The court will then direct further proceedings in relation to final resolution of this action.

In the meantime, the parties are urged to compromise their positions in a reasonable effort to resolve this matter for the sake of Grund's health and to prevent further litigation. If the court's assistance in this matter would be helpful, the parties shall so notify the court.

**IT IS SO ORDERED.**

Date:  03/24/2010

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Donald G. Banta
INDIANA OFFICE OF THE ATTORNEY GENERAL
donald.banta@atg.in.gov

Lynne Denise Hammer
OFFICE OF THE INDIANA ATTORNEY GENERAL
Lynne.Hammer@atg.in.gov

SUSAN GRUND
DOC #941457
Rockville Correctional Facility
811 W 50 N
Rockville, IN 47872